UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES STEPHEN MCCUNE,

      Plaintiff,

v.

VIRGINIA WORKMAN,

      Defendant.

Case No. 2:14-cv-25
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on Defendant Virginia Workman's Objections [ECF No. 29] to the Magistrate Judge's June 13, 2016 Report and Recommendation [ECF No. 27]. In his Report and Recommendation, the Magistrate Judge recommended that the Court grant Workman's Motion for Summary Judgment [ECF No. 22] as to Plaintiff's claim under 42 U.S.C. § 1983 and deny Workman's Motion as to Plaintiff's claim under the Americans with Disabilities Act ("ADA"). For the following reasons, Workman's Objections [ECF No. 29] are **OVERRULED** and the Report and Recommendation [ECF No. 27] is **ADOPTED** and **AFFIRMED**.

### I.    BACKGROUND

Plaintiff James Stephen McCune is a blind inmate at the Madison Correctional Institution ("MaCI"). (Compl. at PageID 55 [ECF No. 4].) At MaCI, inmates are classified based on their security status. Level 1 inmates are minimum security; Level 2 inmates are medium security. (*See id.*) Level 1 inmates are housed primarily in Zone B of the prison whereas Level 2 inmates are housed primarily in Zone A. (*See id.* at PageID 55, 68–69.) Inmates in Zone B are afforded certain rights and privileges that inmates in Zone A are not. (*Id.*) Zone B inmates have greater

freedom of movement, for example, and the right to keep more personal items. (*See* Pl.'s Docs. at PageID 527 [ECF No. 26-1].)

McCune is classified as a Level 1, minimum security inmate. (Compl. at PageID 55.) Until May 2013, however, McCune was assigned to Zone A because of his enrollment in the prison's sight impaired program (the "Program"), which is maintained only in Zone A. (*See id.* at PageID 55, 68–69; Workman Decl. ¶ 5 [ECF No. 22-1].) All blind inmates who qualify for the Program are housed in Zone A when they arrive at the prison. (Workman Decl. ¶ 5.)

In March 2013, McCune filed an internal grievance about his housing assignment. (Compl. at PageID 55.) McCune argued that he was being denied the rights and privileges associated with being a Level 1 inmate because he was blind and, thus, assigned to Zone A. (*See id.*) Workman disputes this allegation; she avers that McCune received all of the privileges afforded Level 1 inmates even when he was housed in Zone A. (Answer ¶ 5 [ECF No. 12].)

As a result of his grievance, McCune was transferred that May to Zone B. (Compl. at PageID 55.) McCune's transfer was contingent upon him signing an "Understanding of Transfer" drafted by Workman:

> "I, Inmate McCune A-302339, am requesting to transfer to Madison Correctional Zone B. I am a level 1B offender and wish to have full access to the privileges that are offered as a level 1B offender. However, due to being vision impaired I have remained on Zone A of Madison Correctional. I am now requesting to transfer to Zone B with full understanding that I am voluntarily resigning from the vision impaired program that is offered at MaCI. By resigning and transferring to Zone B I understand that I will not have access to the Braille Room and the equipment that is provided inside. I will not have access to a Braille typewriter, I have full understanding that these items will not be provided to me on Zone B of the prison. I will no longer receive any of the items that are purchased by the department for the sole purpose of the vision impaired program. The only privilege I will receive in Zone B is an assigned Blind Aid by the department. I am also allowed to have Hadley School for the Blind send in classroom material that is approved by ODRC."

2

(Pl.'s Docs. at PageID 347–48.) McCune signed the Understanding of Transfer and purportedly resigned from his participation in the Program. (Compl. at PageID 55.) Nonetheless, McCune alleges that he received permission from Workman to obtain blind assistance devices from outside sources, such as charities or businesses. (*Id.*)

After arriving in Zone B, McCune was informed by his case manager that Workman had prohibited him from touching any of the three braillers (i.e., braille typewriters) in that zone. (Compl. at PageID 55–56.) Recognizing that sighted inmates were permitted to receive paper and typewriters, and believing that he could receive a brailler and braille paper from an outside source, McCune began communicating with blind agencies, companies, foundations, and other organizations about obtaining blind assistance devices. (*Id.* at PageID 55.) Some of these organizations contacted Workman about MaCI's accommodation policies for sight impaired inmates. (*Id.*)

According to McCune, Workman did not appreciate these inquiries. (Compl. at PageID 55.) On October 23, 2013, she allegedly had McCune's case manager convey to McCune that she "was fed up" with him writing letters and that if he continued trying to obtain a brailler or braille paper from outside sources, she would "have [his] ass moved back to [Zone A] so fast [his] head would spin." (*Id.*) The next day, the case manager asked if McCune still needed a brailler. (*Id.*) When McCune indicated that he did, he was moved back to Zone A. (*Id.* at PageID 55–56.) McCune had not violated any prison rules, and he was still a Level 1 inmate.

Back in Zone A, McCune was assigned to share a room with a Level 2 inmate who had no connection to the Program. (Compl. at PageID 56.) This inmate allegedly harassed and assaulted McCune. (*Id.* at PageID 76.) McCune filed a grievance about his cellmate assignment and was assigned a new cellmate. (*See id.* at PageID 79.) McCune suggests that Workman placed

3

him with a violent, Level 2 inmate in retaliation for complaining about access to blind assistance devices. (*See id.* at PageID 55–57.)

From Workman's perspective, she "made it clear to Inmate McCune that any Braille aids or equipment that were [in] Zone B were not part of the MaCI visually impaired/blind program." (Workman Decl. ¶ 9.) McCune chose to move to Zone B, nonetheless. (*See id.* ¶¶ 7–9.) She denies granting McCune permission to obtain blind assistance devices from outside agencies. (*Id.* ¶ 9.) And although she admits moving McCune from Zone B back to Zone A, the move "was not a punishment and was not done because he was being discriminated against because of his disability. Quite the contrary, [McCune's move] was made in an attempt to assure that his needs as a visually impaired/blind inmate at MaCI would be met." (*Id.* ¶ 11.) Workman also defends McCune's Zone A cell assignment. Ohio Department of Rehabilitation and Correction policy allows for Level 1 and Level 2 inmates to be housed together, she notes. (*Id.* ¶ 14.)

Since March 2015, McCune has resided in Zone B. (Workman Decl. ¶ 13.) He now has access to a refurbished brailler, assistive services, and various other accommodations. (*Id.*)

McCune filed his Complaint on January 27, 2014. (Compl. at PageID 51.) He accuses Workman of violating (1) his constitutional and civil rights and (2) his rights under the ADA. (*Id.* at PageID 57.) He requests that he be placed in Zone B where he can enjoy the rights and privileges afforded Level 1 inmates; he requests access to a brailler and braille paper (or to at least be permitted to obtain those items) while in Zone B; and he seeks compensation for the pain, suffering, and mental and emotional distress that he endured as a result of Workman's alleged discrimination and retaliation. (*Id.*)

Workman moved for summary judgment on February 19, 2016. (Mot. for Summ. J. at 1 [ECF No. 22].) The Magistrate Judge issued a Report and Recommendation [ECF No. 27] on

4

June 13, 2016. He recommended that the Court grant Workman summary judgment on McCune's § 1983 claim but deny her Motion as to McCune's ADA claim. (June 13, 2016 Report & Rec. at 1.)

Workman now objects to the Report and Recommendation. (Objs. at 1 [ECF No. 29].) She insists that she is entitled to summary judgment on McCune's ADA claim. (*Id.*)

## II. ANALYSIS

### A. Standard of Review

If a party objects within the allotted time to a report and recommendation, 28 U.S.C. § 636(b)(1)(C) provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See also* Fed. R. Civ. P. 72(b)(3); *United States v. Curtis*, 237 F.3d 598, 602–03 (6th Cir. 2001).

Here, Workman has objected within the allotted time; she seeks summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). "[I]f the moving party meets this burden, the nonmoving party must set forth specific facts indicating the existence of a genuine issue." *Everson v. Leis*, 412 F. App'x 771, 774 (6th Cir. 2011). To show the existence of a genuine issue of material fact, the nonmoving party must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

5

motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Although the Court "need consider only the cited materials, . . . it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

McCune represents himself in this matter. A pro se litigant's pleadings are to be construed liberally and have been held to less stringent standards than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). A court should make a reasonable attempt to read the pleadings of a pro se litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 749 (S.D. Ohio 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Even so, pro se plaintiffs must still comply with the procedural rules that govern civil cases. *McNeil v. United States,* 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted as to excuse mistakes by those who proceed without counsel.").

B. **Objections**

McCune brings a claim under Title II of the ADA. Title II provides that "no qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "[T]he phrase 'services, programs, or activities' encompasses virtually everything a public entity does." *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008) (quoting 42 U.S.C. § 12132). And the term "public entity" includes state prisons. *See United States v. Georgia*, 546 U.S. 151, 153–54 (2006); *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010).

When, as here, a plaintiff attempts to establish an ADA claim through indirect evidence of discrimination, courts in the Sixth Circuit analyze that claim under the *McDonnell Douglas* burden shifting framework. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Under that framework, once a plaintiff has established a prima facie case of disability discrimination, the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for its challenged action. *Anderson*, 798 F.3d at 357. After the defendant articulates a reason, the burden shifts back to the plaintiff to demonstrate that the proffered reason was in fact a pretext designed to conceal unlawful discrimination. *Id.* "On a motion for summary judgment a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

1. **Prima Facie Case**

To establish a prima facie discrimination case under Title II, a plaintiff must show that

"(1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson*, 798 F.3d at 357 (footnote omitted). "'Further, the plaintiff must show that the discrimination was *intentionally* directed toward him or her in particular.'" *Id.* (quoting *Tucker*, 539 F.3d at 532).

Workman offers several arguments as to why the Magistrate Judge purportedly erred in failing to grant her summary judgment on McCune's ADA claim. (Objs. at 4–7 [ECF No. 29].) Workman does not explicitly discuss the *McDonnell Douglas* framework in her Objections or her Motion for Summary Judgment. The focus of her Objections, however, implicates McCune's ability to establish a prima facie case under Title II of the ADA.

To begin, Workman contends that McCune's Response to the Motion for Summary Judgment ("Response") fails to set forth specific facts supporting his ADA claim. (*Id.* at 5, 7.) In his Response, McCune outlines the allegations that he made in his Complaint and he references various documents that support his ADA claim. (Resp. to Mot. for Summ. J. at 1–4 [ECF No. 26].) Those supporting documents are attached to his Complaint and his Response. (*See generally* Pl.'s Docs. [ECF No. 26-1].) Through those materials, McCune advances two arguments in support of his ADA claim: (1) that Workman denied him the rights and privileges afforded Level 1 inmates because of his blindness and (2) that Workman denied him access to typing materials while he was housed in Zone B because of his blindness. (*See* Compl. at PageID 55–56 [ECF No. 4].)

From the documents that McCune has submitted, a jury could reasonably find that McCune is disabled (by vision impairment) and is otherwise qualified (i) to receive typing materials and (ii) to enjoy the rights and benefits afforded Level 1 inmates. (*See, e.g.*, Pl.'s Docs

8

at PageID 514–17, 526–27 ("I am a Level 1-B Security, I was on zone 'B' before but was moved to this side for the Blind Program.") ("Sighted inmates are allowed to order and receive typewrit[]ers . . . .").) Viewing these documents in the light most favorable to McCune, a jury could also reasonably find that Workman intentionally discriminated against McCune because of his blindness. (*See, e.g., id.*) McCune, for example, attaches to his Response several "kites" (internal complaints) and his Appeal to the Chief Inspector. (*See id.*) In his kites and internal appeal, McCune states that he was denied the rights and privileges afforded Level 1 inmates because, as a blind inmate, he was forced to reside in Zone A if he wanted access to blind assistance devices. (*See id.*) And, according to McCune, "there is no way a Level-1 [inmate] on [Zone A] can have all his rights and privileges." (*Id.* at PageID 527.) In those documents, McCune also states that sighted inmates are permitted to receive typewriters but that he was prohibited from receiving a brailler (a typewriter equivalent for sight impaired individuals) while assigned to Zone B. (*Id.* at PageID 526.) Buttressing this evidence is Workman's admission that she "did not tell Inmate McCune that he could attempt to secure a [b]railler or [b]raille paper from an outside entity or agency," (Workman Decl. ¶ 9 [ECF No. 22-1]), and McCune's assertion, articulated in documents attached to his Complaint, that Workman moved McCune back to Zone A because of his attempts to order and receive a brailler from an outside entity, (*see, e.g.*, Notification of Grievance at PageID 65 [ECF No. 4]).

Workman disputes some of McCune's evidence. She insists that McCune was provided the rights and privileges afforded Level 1 inmates even when he resided in Zone A. (Answer ¶ 5 [ECF No. 12].) The fact that Workman disputes certain pieces of McCune's evidence does not entitle her to summary judgment though. The Court views the evidence in the light most favorable to the nonmoving party when evaluating a motion for summary judgment. *Adickes*,

9

398 U.S. at 158–59. And when viewed in the light most favorable to McCune, the documents that he has produced create a genuine issue of material fact as to whether Workman discriminated against him by denying him the privileges afforded Level 1 inmates because of his blindness. Moreover, even if the Court were to find no genuine issue of material fact as to whether Workman denied McCune the privileges of a Level 1 inmate, a genuine issue would still exist as to McCune's assertion that Workman prohibited him from receiving a brailler but permitted sighted inmates to receive typewriters. Workman has not disputed that allegation. (*See generally* Workman Decl.)

Workman argues that the Court should disregard various documents attached to McCune's Response because those documents were created after McCune filed his Complaint. (Objs. at 7 [ECF No. 29].) Even if the Court were to disregard the later-created documents though, McCune has still offered sufficient evidence from which a jury could determine that he has stated a prima facie case under the ADA. McCune's Appeal to the Chief Inspector and several of his kites, for example, were created before McCune filed his Complaint. (*See* Pl.'s Docs at PageID 514–17, 526–27.)

Workman next contends that McCune's Response to the Motion for Summary Judgment "does not comply with the requirements of Fed. R. Civ. P. 56(c)(2) such that it can be considered in support of Plaintiff's claim of an ADA violation." (Objs. at 5.) Workman, however, does not provide any further elaboration on this argument; accordingly, the Court need not consider it. *See Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object.").

10

Workman also disputes some of the "factual finding[s]" that may have supported the Magistrate Judge's recommendation on the ADA claim. (Objs. at 5.) Workman contends that the three braillers referenced in McCune's documents were not "available" in Zone B. (*Id. But see* June 13, 2016 Report & Rec. at 4, 8 [ECF No. 27].) These braillers were allegedly not available because Workman did not have authority to allow McCune to use them. (Objs. at 5–6.) Workman's argument is immaterial. Regardless of whether braillers were available in Zone B, McCune has produced sufficient evidence to create a genuine issue of material fact as to whether he suffered discrimination because of his blindness. As noted above, McCune has produced evidence indicating that sighted inmates could order and receive typewriters but that he was prohibited from ordering and receiving a brailler while he was housed in Zone B. (*See* Pl.'s Docs. at PageID 526.)

McCune has been using a refurbished brailler in Zone B since March 2015. (Objs. at 6.) Unlike the other three braillers in Zone B, the refurbished brailler is one that Workman can purportedly authorize inmates to use. (*Id.*) Workman brings this to the Court's attention to "highlight[] the efforts being made at MaCI to provide [McCune] with accommodations to support him while he is housed now on Zone B." (*Id.*) But despite McCune's current permission to use a refurbished brailler, a genuine issue of material fact still exists as to whether Workman discriminated against McCune because of his blindness. (*See, e.g.*, Pl.'s Docs at PageID 514–17, 526–27.)

Workman also calls attention to "the many times within [McCune's] pleadings that [he] asserts that he '[did not ask the] institution for any [type of] . . . services or special treatment' while he was in Zone B and that he was 'forced' back to Zone A when he conveyed that he needed the use of a brailler." (Objs. at 6 (quoting Compl. at PageID

11

55, 65 [ECF No. 4]).) Workman, in other words, implies that she could not have discriminated against McCune because McCune never requested a brailler from MaCI. Whether McCune requested a brailler or other "services or special treatment" from MaCI is not dispositive of McCune's ADA claim though. As McCune alleges, Workman could have discriminated against him by permitting sighted inmates to receive typewriters from outside sources but prohibiting him from receiving a brailler from an outside source. (*See* Pl.'s Docs at PageID 526.)

Finally, Workman asserts that McCune should have spoken with the MaCI ADA Coordinator about his inability to obtain a brailler in Zone B. (Objs. at 6.) Workman implies that McCune has failed to fulfill some type of administrative-exhaustion requirement. (*See id.*) Workman, however, did not raise this argument in her Motion for Summary Judgment. (*See generally* Mot. for Summ. J. [ECF No. 22].) Nor did she provide any further explanation of the argument in her Objections. (*See* Objs. at 6.) Accordingly, her argument is not well taken. See *Yukins*, 7 F. App'x at 356.

McCune, in sum, has produced sufficient evidence to create a genuine issue of material fact as to whether he can establish a prima facie case of disability discrimination under Title II of the ADA.

### 2. Nondiscriminatory Reason

Given that McCune has produced sufficient evidence to establish a prima facie case of disability discrimination, the burden shifts to Workman to articulate some legitimate, nondiscriminatory reason for her actions. Workman asserts that McCune was prohibited from using the braillers in Zone B because (i) those braillers "were for use on projects to make braille booklets for distribution" and (ii) Workman did not have

12

"authority to grant [McCune] permission to use" those braillers. (Objs. at 5–6.) McCune was not prohibited from using typing materials while in Zone B because of his blindness, Workman insists. *(See id.)*

Workman's explanation provides a legitimate, nondiscriminatory reason as to why McCune was not permitted to use the braillers located in Zone B. Workman's argument misses the mark, however, as to McCune's argument that Workman permitted sighted inmates to order and receive typewriters but prohibited him from ordering and receiving a brailler. Workman has not articulated a legitimate, nondiscriminatory explanation with respect to that argument. Workman has also failed to articulate a legitimate, nondiscriminatory explanation with respect to McCune's argument that Workman denied him the rights and privileges afforded Level 1 inmates because of his blindness. Workman, as noted above, simply challenges the factual validity of that argument.

Thus, because McCune has produced sufficient evidence to establish a prima facie case of disability discrimination and Workman has not articulated a legitimate, nondiscriminatory reason for her actions, Workman is not entitled to summary judgment on McCune's ADA claim.

### III. CONCLUSION

For the foregoing reasons, Workman's Objections [ECF No. 29] are **OVERRULED** and the June 13, 2016 Report and Recommendation [ECF No. 27] is **ADOPTED** and **AFFIRMED**.

**IT IS SO ORDERED.**

\_\_\_8-3-2016_____     _____
**DATE**                              **EDMUND A. SARGUS, JR.**
                                      **CHIEF UNITED STATES DISTRICT JUDGE**